**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JACK RICHARD McGEE,                    )          No. C 02-2661 PJH (PR)
                                       )
          Petitioner,                  )          ORDER DENYING PETITION
                                       )          FOR WRIT OF HABEAS
vs.                                    )          CORPUS
                                       )
MIKE KNOWLES, Warden                   )
                                       )
          Respondent.                  )
_____        )

        This is a habeas corpus case filed pro se by a state prisoner pursuant to 28

U.S.C. § 2254.  The court ordered respondent to show cause why the writ should not be

granted.  Respondent has filed an answer and a memorandum of points and authorities

in support of it, and has lodged exhibits with the court.  Petitioner has responded with a

traverse.  The matter is submitted.

                                    **BACKGROUND**

        An Alameda County jury convicted petitioner of eight counts of lewd and

lascivious conduct with a child under the age of fourteen.  See Cal. Penal Code § 288

(a).  The jury also found that petitioner had committed lewd acts against more than one

victim, see Cal. Penal Code § 667.61(e)(5), and had substantial sexual conduct with a

victim under the age of fourteen, see Cal. Penal Code § 1203.066 (a)(8).  He received

thirty-three years to life in prison.  The California Court of Appeals affirmed his

conviction, but reversed as to the sentence because the trial court erred in imposing one

of the enhancements.  On remand, the trial court resentenced petitioner to thirty-two

years to life in prison.  The Supreme Court of California denied review of the conviction.

The following facts are summarized from the opinion of the California Court of Appeal. Ex. R at 3-5.

On November 7, 1998, the three victims and a younger male relation spent the night at the home of a family friend, petitioner. Two of the victims, Sabrina, age ten, and Vanessa, age nine, were sisters. Their mother was Janet S. Janet is also the mother of Stacy S. The third victim, Jasmine, age seven, and the younger male relation, Jovan, age four, are the children of Stacy. Petitioner had known Janet for thirty years. He was so close to the children that they referred to him as "Uncle McGee."

After petitioner brought the children home, Stacy questioned them about their visit. All of the children recounted similar stories of sexual abuse. Joel, age five or six, who also was Stacy's child, recounted sexual abuse by petitioner from the week before. He told her that petitioner showed him a pornographic movie and told him to touch Jasmine's vagina and get on top of her. Stacy called the police. After the police interviewed the children, she took them to the hospital for medical evaluations.

According to the children, the sexual abuse started shortly after they had gone to bed for the evening. Jasmine testified that petitioner took off his pants and got on top of her. He pulled down her panties and put his private against her thigh. She felt him penetrate her vagina. He then started abusing the other girls. Jasmine testified that she saw him touch Sabrina's breast under her shirt and Vanessa's breast over her shirt. She said that he told Jovan to get on top of her. When she awoke the next morning, petitioner was lying next to her. She felt something poking her. When he stood up, she saw his penis. Before they went home, he warned them not to tell their parents.

Sabrina's testimony matched much of Jasmine's. She further testified that petitioner got on top of her, touched her breasts and touched her genitals. She also saw him get on top of Vanessa. She went into the bathroom with Vanessa the next morning. According to Sabrina, petitioner entered the bathroom and started masturbating. She

1   testified that he ejaculated on Vanessa's face.  On the way home, he showed them a

2   pornographic picture of a man.

3         Vanessa did not testify at trial.  She did, however, testify at the preliminary

4   hearing.  While she was less detailed and coherent than the other girls, much of her

5   testimony matched that of the other children.  She testified that petitioner got on top of

6   Jasmine and Sabrina.  She also saw him fondle Sabrina's breasts and genitals.  She

7   testified that petitioner pushed the girls into the bathroom.  She saw him masturbate and

8   ejaculate onto her face.  She also testified that the next morning petitioner tried to

9   penetrate Jasmine again.

10        The pediatrician who examined the children after the incident testified that

11   Jasmine had an abrasion on her labia that was consistent with vaginal penetration.  The

12   other girls had no injuries.  The doctor also testified that the girls made consistent

13   statements about the incident.  Moreover, a vaginal swab of Jasmine tested positive for

14   blood.

15        Petitioner claimed that the children and their mothers were lying and denied the

16   allegations.

17                **STANDARD OF REVIEW**

18        A district court may not grant a petition challenging a state conviction or sentence

19   on the basis of a claim that was reviewed on the merits in state court unless the state

20   court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

21   involved an unreasonable application of, clearly established Federal law, as determined

22   by the Supreme Court of the United States; or (2) resulted in a decision that was based

23   on an unreasonable determination of the facts in light of the evidence presented in the

24   State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions

25   of law and to mixed questions of law and fact, <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362,

26   407-09 (2001), while the second prong applies to decisions based on factual

27

28                     3

1   determinations, <u>Miller-El v. Cockrell</u>, 123 S. Ct. 1029, 1041 (2003).

2       A state court decision is "contrary to" Supreme Court authority, that is, falls under

3   the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

4   that reached by [the Supreme] Court on a question of law or if the state court decides a

5   case differently than [the Supreme] Court has on a set of materially indistinguishable

6   facts." <u>Williams (Terry)</u>, 529 U.S. at 412-13.  A state court decision is an "unreasonable

7   application of" Supreme Court authority, falling under the second clause of § 2254(d)(1),

8   if it correctly identifies the governing legal principle from the Supreme Court's decisions

9   but "unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.

10  The federal court on habeas review may not issue the writ "simply because that court

11  concludes in its independent judgment that the relevant state-court decision applied

12  clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411.  Rather, the

13  application must be "objectively unreasonable" to support granting the writ. <u>Id.</u> at 409.

14      Factual determinations by state courts are presumed correct absent clear and

15  convincing evidence to the contrary." <u>Miller-El</u>, 123 S. Ct. at 1041.  This presumption is

16  not altered by the fact that the finding was made by a state court of appeals, rather than

17  by a state trial court.  <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981); <u>Bragg v. Galaza</u>,

18  242 F.3d 1082, 1087 (9th Cir.), <u>amended</u>, 253 F.3d 1150 (9th Cir. 2001).  A petitioner

19  must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of

20  correctness; conclusory assertions will not do.  <u>Id.</u>

21      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

22  determination will not be overturned on factual grounds unless objectively unreasonable

23  in light of the evidence presented in the state-court proceeding." <u>Miller-El</u>, 123 S. Ct. at

24  1041; <u>see</u> <u>also</u> <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107 (9th Cir. 2000).

25      When there is no reasoned opinion from the highest state court to consider the

26  petitioner's claims, the court looks to the last reasoned opinion, in this case that of the

27

28                                      4

California Court of Appeal.  See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991);

Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

A.    Issues Presented

        As grounds for habeas relief, petitioner contends that:  (1) His waiver of his Sixth

Amendment right to representation was ineffective because of the trial court's

inadequate explanation of the dangers and disadvantages of self-representation; (2) his

due process rights were violated by admission of evidence of prior sexual misconduct;

(3) his due process rights were violated because the trial court impermissibly lessened

the prosecution's burden of proof by instructing the jury with CALJIC 2.50.01 and 2.50.1;

(4) his Sixth Amendment and due process rights were violated when the trial court failed

to instruct sua sponte with CALJIC 10.64; (5) denial of his motion for a new trial violated

his rights; and (6) his Sixth Amendment right to trial by jury was violated when the court

did not submit to the jury a question which affected whether he could receive probation.


B.    Sixth Amendment Right to Representation

        The trial court granted petitioner's motion to represent himself.  He contends that

the dangers of self-representation were not adequately explained to him, rendering

invalid his waiver of his Sixth Amendment right to representation by counsel.

        A criminal defendant has a Sixth Amendment right to self-representation. Faretta

v. California, 422 U.S. 806, 832 (1975).  Before a trial court may allow an accused to

exercise the right of self-representation, it must conclude that the accused has

"knowingly and intelligently" waived his underlying right to counsel.  Faretta, 422 U.S. at

835.  Consequently, the Sixth Amendment requires that a state trial court, before letting

an accused proceed pro se, be assured that he "is made aware of the dangers and

disadvantages of self-representation so the record will establish that 'he knows what he

is doing and his choice is made with eyes open.'" Snook v. Wood, 89 F.3d 605, 613 (9th Cir. 1996) (quoting Faretta, 422 U.S. at 835).  A waiver ordinarily will be considered knowing and intelligent if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances, even though the defendant may not know the specific detailed consequences of invoking it.  Iowa v. Tovar, 541 U.S. 77, 92 (2004).  A trial court considering a defendant's decision to represent himself "is to look not to the quality of his representation, but rather to the quality of his decision." Bribiesca v. Galaza, 215 F.3d 1015, 1020 (9th Cir. 2000).  While a trial judge may doubt the quality of representation that a defendant may provide for himself, the defendant must be allowed to exercise his right to self-representation so long as he knowingly and intelligently waives his right to counsel and is able and willing to abide by rules of procedure and courtroom protocol.  McKaskle v. Wiggins, 465 U.S. 168, 173 (1984).          1.       Background

Petitioner initially filed a motion for new counsel.  Ex. A (reporter's transcript of 12/7/99 hearing) at 1.  When the matter came up for hearing, he asked that it instead be treated as a Faretta motion for self-representation.  Id.  After the hearing was continued, petitioner submitted a form petition to represent himself.  Ex. M (clerk's transcript on appeal) at 390-98.  A second hearing was held, at which the motion for self-representation was granted.  Ex. B (reporter's transcript of 12/15/99 hearing) at 4.

On appeal, the California Court of Appeal concluded that the trial court's explanation of the dangers of self-representation was adequate.  Ex. R at 7-9.

2.       Analysis

The trial court made an inquiry into whether petitioner's waiver was knowing and intelligent.  Most significantly, petitioner had represented himself in a prior matter, which would have afforded him a clearer understanding of what he was facing and what he was giving up by waiving a right to counsel than most defendants in his position.  Ex. A

1   at 1.  The trial court also warned petitioner that he would not be treated any differently

2   than if he had been a lawyer, would not get any special treatment because he was pro

3   per, and that he would not be able to appeal his conviction on the basis of ineffective

4   assistance of counsel.  EX. B at 3.  The court advised against self-representation in the

5   strongest possible terms, saying that "I have never seen somebody representing himself

6   to have ever won a case."  Ex. A at 2.[1]

7          As emerges clearly from the description above, the trial court adequately, indeed

8   vividly, explained the dangers and disadvantages of self-representation.  Petitioner's

9   contention that his waiver was not knowing and intelligent because of an inadequate

10  explanation of the dangers and disadvantages of self-representation therefore is without

11  merit, and because his Sixth Amendment right to counsel was not violated, this claim

12  cannot be the basis for habeas relief.  See 28 U.S.C. § 2254(d) (habeas relief may not

13  be granted unless (1) state court decision is contrary to, or an unreasonable application

14  of, clearly established Supreme Court authority, or (2) was based on an unreasonable

15  determination of the facts).

16

17  C.     Evidence of Prior Sexual Misconduct

18         Petitioner objects to admission of Joel's testimony that the week before the

19  charged incident, petitioner showed him a pornographic movie, told him to touch his

20  sister's vagina, and told him to get on top of her.  Ex. R at 9.  The trial court ruled that the

21

22         [1] The trial court also ascertained that petitioner had a high school education and was
23  not under the influence of drugs.  Ex. B at 1.  Petitioner stated that he understood the
    charges against him, and the court and counsel explained the maximum potential
24  sentence.  Id. at 2-3.  Moreover, his motion to represent himself showed that he
    understood the charges against him, the rights he was waiving, and the maximum
25  sentence that could be imposed.  Ex. M (clerk's transcript on appeal) at 390-98.
    Although these points do not go to petitioner's specific claim that the court's warning of
26  the dangers and disadvantages of self-representation were inadequate, they do go to
    the overall issue, which is whether the waiver was knowing and intelligent.
27

28                                                    7

evidence was admissible under two sections of the California Evidence Code:  (1)

Section 1101(b), which provides that although propensity evidence generally is not

admissible, such evidence may be admitted to prove a fact other than disposition, for

instance "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence

of mistake or accident..."; and (2) section 1108(a), which provides that evidence of prior

sexual offenses is admissible to show guilt of the current one.  Id.  The California Court

of Appeal held that the evidence was admissible under section 1101(b) as tending to

show intent and common design or plan, and also under section 1108(a), rejecting

petitioner's contention that section 1108(a) violates due process and equal protection.

Id. at 10-12.

        1.    Section 1101(b)

Petitioner's contention that the uncharged evidence was improperly admitted

under section 1101(b) presents only an issue of state law, which is not grounds for

federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  And even if

he had contended that admission of the evidence under section 1101(b) violated due

process, such a claim would have no merit because the United States Supreme Court

has explicitly left open the question of whether the admission of evidence of other

crimes solely to prove propensity violates due process.  Estelle v. McGuire, 502 U.S.

62, 75 n.5 (1991).  As a result, the state court rejection of this claim could not be

contrary to, or an unreasonable application of, clearly established United States

Supreme Court authority, which in turn means that habeas relief cannot be granted on

this claim.  See 28 U.S.C. § 2254(d)(1).


        2.    Section 1108(a)

            a.    Due process

Petitioner contends that admission of the evidence under section 1108(a)

violated due process.  Evidence code section 1108 was modeled after Rule 413 of the

Federal Rules of Evidence.  See People v. Falsetta, 21 Cal.4th 903, 912 (1999).  Rule

413(a) provides for admission of evidence of prior sexual assaults in sexual assault

cases.  Rule 414(a) of the Federal Rules of Evidence is identical to Rule 413(a) except

for the substitution of the words ""child molestation" where Rule 413 has "sexual assault."

Rule 414 provides that:

> In a criminal case in which the defendant is accused of an offense of
> child molestation, evidence of the defendant's commission of another
> offense or offenses of child molestation is admissible, and may be
> considered for its bearing on any matter that is relevant.

Fed. R. Evid. 414(a).

Similarly, section 1108(a) provides:

> In a criminal action in which the defendant is accused of a sexual offense,
> evidence of the defendant's commission of another sexual offense or
> offenses is not made inadmissible by Section 1101 [excluding evidence
> of character to prove conduct], if the evidence is not inadmissible pursuant
> to Section 353 [requiring exclusion of evidence the prejudicial effect of
> which exceeds its probative value].

Cal. Evid. Code § 1108(a)

The Ninth Circuit Court of Appeals has found that the federal analog to section

1108 relating to the admission of propensity evidence in child molestation cases, Rule

414, does not violate due process, provided that protections remain in place which

prevent the prejudicial effect from outweighing the probative value.  United States v.

LeMay, 260 F.3d 1018 (2001).  In California those protections are provided by Rule 352

of the California Rules of Evidence, which provides that otherwise admissible evidence

may not be admitted if its prejudicial effect outweighs its probative value.  The trial court

here indeed performed section 352 balancing, concluding that prior uncharged

evidence was less inflammatory than the charged act, that it was not unduly time

consuming, that it was not remote in time and that it was probative at to whether

9

1    petitioner had the propensity to commit such acts against children.  See Ex. R at 9.

2    In short, like federal Rule 414, the California rule does not violate due process.

3    Moreover, the United States Supreme Court has explicitly left open the question of

4    whether the admission of evidence of other crimes solely to prove propensity violates

5    due process, Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991), so the state appellate

6    courts' rejection of this claim could not have been contrary to, or an unreasonable

7    application of, clearly established United States Supreme Court authority, see 28

8    U.S.C. § 2254(d)(1), which in turn means that habeas relief cannot be granted on this

9    claim.

10                   b.       Equal protection

11    Petitioner also argues that section 1108 violates his equal protection rights, in

12    that it treats those accused of sex offenses differently from other accused criminals by

13    allowing propensity evidence in sex offense cases.  "The Equal Protection Clause of the

14    Fourteenth Amendment commands that no State shall 'deny to any person within its

15    jurisdiction the equal protection of the laws,' which is essentially a direction that all

16    persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living

17    Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).

18    The Supreme Court has articulated three distinct standards applicable to equal

19    protection analysis:  Strict scrutiny, heightened scrutiny and rational basis review.  City

20    of Cleburne, 473 U.S. at 440-41.  The standard to be invoked depends on the nature of

21    the class involved or the interest affected.  The most lenient standard, rational basis

22    review, requires only that a rational basis exist for the classifications drawn and that the

23    practice in question be adopted in pursuit of legitimate government purposes.  San

24    Antonio Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973).  At the other extreme, the strict

25    scrutiny standard requires a close connection between the legislation or practice under

26    examination and a compelling state interest.  This is the appropriate test when

27

28                                                    10

1    fundamental rights are at stake or a suspect classification is involved.  See, e.g., Roe v.

2    Wade, 410 U.S. 113 (1973) (right to choose an abortion); Shapiro v. Thompson, 394

3    U.S. 618 (1969) (right to travel); Loving v. Virginia, 388 U.S. 1 (1967) (right to marry).

4    Finally, in between these two positions lies an intermediate standard of review,

5    heightened scrutiny: there must be a substantial relationship to an important, although

6    not compelling, state interest.  This standard has been applied only to gender-based

7    classifications.  See, e.g., Califano v. Goldfarb, 430 U.S. 199 (1977); Craig v. Boren,

8    429 U.S. 190 (1976).

9         Petitioner's argument as to this claim is linked to the preceding one; he contends

10   that he has established that he has a due process right not to have propensity evidence

11   introduced against him, that this is a fundamental right, and that section 1108 therefore

12   is subject to strict scrutiny.  As noted above, however, he is wrong that application of

13   section 1108 to him violated due process, so he has failed to establish the predicate for

14   his contention that strict scrutiny applies.  Therefore, this claim is subject only to the very

15   deferential "rational basis" test.  See Estelle v. Dorrough, 420 U.S. 534, 537–538

16   (1975) (subjecting two classifications of defendants to rational-basis scrutiny when no

17   fundamental right is involved).  Under rational-basis review, the law is unconstitutional if

18   it lacks a rational relationship to a legitimate government interest.

19        Prosecuting crime effectively is a legitimate government interest.  LeMay, 260

20   F.3d at 1031. The California legislature has chosen to treat admission of evidence

21   against sex offenders differently because, in part, of the "serious and secretive nature of

22   sex crimes and the often resulting credibility contest at trial."  Falsetta, 21 Cal.4th at 911.

23   This is a rational basis for the distinction.  Application of section 1108 did not violate

24   petitioner's equal protection rights, and the state appellate courts' rejection of this claim

25   was not contrary to, nor an unreasonable application of, clearly established Supreme

26   Court authority.

27

28                                      11

c.     Prejudice

A habeas petitioner is not entitled to relief unless the trial error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice."   Id. (citation omitted).

Because admission of the evidence under section 1101(b) was proper, any error relating to 1108(a) was harmless.

3.     Conclusion

For the reasons discussed above, petitioner's claim that he is entitled to habeas relief because of admission of the prior offense evidence is without merit.

D.     CALJIC 2.50.01 and 2.50.1

The Ninth Circuit has held that instructing the jury with the 1996 version of CALJIC 2.50.01 and CALJIC 2.50.1 violates a defendant's right not to be found guilty except upon proof beyond a reasonable doubt. Gibson v. Ortiz, 387 F.3d 812, 822 (2004).  This is because 2.50.01 says that the jury may, but is not required to, infer from evidence of previous offenses that the defendant committed the crime with which he is charged, and 2.50.1 says that such previous offenses need be proved only by a preponderance of the evidence, not beyond a reasonable doubt. Id. at 821-22. Together, the instructions allow conviction by a preponderance, rather than requiring proof beyond a reasonable doubt.

However, in this case petitioner was instructed with the 1999 revision of 2.50.01, which added this paragraph:  "However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.  The weight

12

1   and significant of the evidence, if any, are for you to decide." Ex. R at 13 n.5.  Petitioner

2   nevertheless contends that the instructions still violate his due process rights.

3          The heart of the Gibson decision is the court's conclusion that the pre-revision

4   instructions given in that case provided "two routes of conviction, one by a

5   constitutionally sufficient standard and one by a constitutionally deficient one."  387 F.3d

6   at 823.  When it is impossible to know whether a jury used the impermissible legal

7   theory or the one which meets constitutional requirements, the unconstitutionality of one

8   of the routes requires that the conviction be set aside.  Id. at 825.  In this case, however,

9   the constitutionally-deficient route was blocked off:  The court instructed the jury in

10  unequivocal words that it could not find petitioner guilty beyond a reasonable doubt just

11  because it had found by a preponderance of the evidence that he committed prior bad

12  acts.  The jury is presumed to have followed the instructions, Weeks v. Angelone, 528

13  U.S. 225, 234 (2000), and following the instructions it could not have taken the

14  constitutionally-impermissible route to a guilty verdict.  Petitioner's due process rights

15  were not violated.  Because his rights were not violated, the state appellate courts'

16  rejection of this claim was not contrary to, nor an unreasonable application of, clearly

17  established United States Supreme Court authority.

18  E.     CALJIC 10.64

19         Petitioner contends that the trial court's failure to give a limiting instruction

20  regarding the use of "Child Sexual Abuse Accommodation Syndrome" ("CSAAS")

21  evidence violated his due process rights.

22         a.     Background

23         At trial, the prosecution introduced expert testimony about CSAAS.  CSAAS

24  "describes various emotional stages, experienced by sexually abused children, that may

25  explain their sometimes piecemeal and contradictory manner of disclosing abuse."

26  Brodit v. Cambra, 350 F.3d 985, 991 (2003).  Some California courts have held that a

27

28                                              13

1   limiting instruction must be given when CSAAS evidence is received.  See, e.g., People

2   v. Housley, 6 Cal. App. 4th 947, 959 (1992).  Petitioner therefore claims that CALJIC

3   10.64, which is such a limiting instruction, should have been given, and that failure to

4   give it violated not only state law but also his constitutional rights.[2]

5        The court of appeal held that the trial court erred under state law in not giving a

6   limiting instruction, but that the error was harmless because the expert's testimony was

7   cast only in general terms, rather than being specific to the case.  Ex. R at 16-17.  The

8   court did not explicitly address petitioner's contention that failure to give a limiting

9   instruction violated due process, although the affirmance necessarily means that that

10  claim was rejected.  See Grubb v. Public Utilities Commn, 281 U.S. 470, 477-78 (1930)

11  (questions properly raised in appellant's brief necessarily resolved against appellant by

12  affirmance); Lurie v. State of California, 633 F.2d 786, 789 (9th Cir. 1980) (citing

13  Grubb).

14  _____

15      [2] CALJIC 10.64 provides:

16           Evidence has been presented to you concerning [child sexual abuse
        accommodation] [rape-trauma] syndrome.  This evidence is not received
17      and must not be considered by you as proof that the alleged victim's
        [molestation] [rape] claim is true.

18           [[Child sexual abuse accommodation] [rape trauma] syndrome
        research is based upon an approach that is completely different from that
19      which you must take to this case.  The syndrome research begins with the
        assumption that a [molestation] [rape] has occurred, and seeks to describe
20      and explain common reactions of [children] [females] to that experience.  As
        distinguished from that research approach, you are to presume the
21      defendant innocent.  The People have the burden of proving guilt beyond a
22      reasonable doubt.]

             You should consider the evidence concerning the syndrome and its
23      effect only for the limited purpose of showing, if it does, that the alleged
        victim's reactions, as demonstrated by the evidence, are not inconsistent
24      with [him] [her] having been [molested] [raped].

25
    Committee on Standard Jury Instructions, Criminal, Superior Court of Los Angeles County,
26  California, California Jury Instructions, Criminal 690-91 (7th ed. 2005).

27

28                                    14

b.    Standard

There is no clearly-established United States Supreme Court authority setting a general standard for when due process requires limiting instructions.  Thus the controlling authority is that which applies to all failures to give instructions.

Failure to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings.  Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment.  Id.  The omission of an instruction is less likely to be prejudicial than a misstatement of the law.  Walker v. Endell, 850 F.2d at 475-76 (citing Henderson v. Kibbe, 431 U.S. at 155).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy burden."  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

c.    Analysis

In this case the expert's testimony was couched in general terms, although the prosecutor also posed hypothetical questions containing facts similar to the facts of this case. Ex. R at 16-17; RT 587-99.[3]  Petitioner quite rightly points out that the hypothetical questions made the expert's opinion seem to apply to this particular case, but that is not enough to make admission of the testimony error under state law, much less under the constitution.  This is because under California law expert testimony about CSAAS may be received to explain why the particular victim in the case acted in a manner that the jury might, in the absence of an explanation of CSAAS, think inconsistent with the

---

[3] The admission of the testimony itself did not violate due process.  Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  The evidence supported an inference permissible under California law, that behavior like that of the victim's is not inconsistent with abuse.

1   victim's story of abuse – for instance, by delaying telling an adult about it.  Id. at 15.  In

2   this case the expert's testimony was only that which was allowable under California law;

3   it was not that the victims' claims were true.  Therefore, a limiting instruction would have

4   had minimal value.  All such an instruction would do is warn the jury not to misuse the

5   testimony.  The absence of such a warning was not sufficient to render the entire trial

6   fundamentally unfair.

7        The state appellate courts' rejection of this claim was not contrary to, nor an

8   unreasonable application of, clearly establish Supreme Court authority.

9   F.     Denial of Motion for New Trial

10        Petitioner contends that his due process rights, his right to effective assistance of

11   counsel, and his Confrontation Clause rights were violated when the trial court denied

12   his motion for a new trial.  There is no constitutional right to a particular ruling, or a

13   correct ruling, on a motion for new trial.  However, the court will treat this issue as raising

14   the merits of petitioner's grounds for the motion for new trial, i.e., that his right to counsel

15   and due process rights were violated when his request for an investigator was denied

16   and that his right to confront the witnesses against him was violated when Vanessa was

17   declared to be unavailable and her preliminary hearing testimony admitted.

18        1.     Denial of Request for an Investigator

19        Petitioner's requests for appointment of an investigator to assist him at the

20   state's expense were denied when he was unable to explain what the investigator would

21   do.  Ex. R at 21-22.  He contends that the denials violated his due process rights and

22   his right to represent himself, the latter of which he contends includes a right to state

23   assistance to enable him to do so effectively.

24        As respondent points out, there is no clearly-established United States Supreme

25   Court authority requiring that indigent defendants who represent themselves be

26   provided with investigative services.  In fact, the Court has specifically declined to

27

28                                              16

1   decide that question.  Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985).  Therefore

2   the state courts' rejections of this claim was not contrary to, nor an unreasonable

3   application of, clearly established Supreme Court authority.  See 28 U.S.C. §

4   2254(d)(1) (clearly established Supreme Court authority standard).

5           Furthermore, leaving aside section 2254(d)(1), petitioner has not established

6   that his rights were violated.  The Ninth Circuit has held that an indigent defendant who

7   is representing himself has a constitutional right to investigative services, but, as is the

8   case with represented indigents, only when the defendant demonstrates that these

9   services are needed.  Smith v. Enomoto, 615 F.2d 1251, 1252 (9th Cir.), cert. denied,

10  449 U.S. 866 (1980).  The Smith court cited to Mason v. State of Arizona, 504 F.2d

11  1345 (1974), a case involving a represented indigent defendant, for the proposition that

12  a showing of need is required to trigger the constitutional right to an investigator.  Smith,

13  615 at 1252.  In Mason the court held that to obtain an investigator the defendant must

14  advise the court, as specifically as possible, as to why such investigation is needed.

15  504 F.2d at 1352.  The court of appeals held that although it might be difficult to

16  demonstrate an undoubted need for the investigator, the defendant must at least advise

17  the trial court of the general lines of inquiry he wishes to pursue.  Id.

18          Petitioner does not dispute the factual portions of the court of appeal's

19  discussion of this claim:

20                  The record reveals that appellant never offered more than a
            general statement that he needed an investigator to prepare his defense.
21          The trial court denied the request solely on the ground that appellant
            needed to specify what use he would make of the investigative services.
22          Thus, in the hearing on January 24, 2000, defendant stated, "I'd like to
            have an investigator because though I'm pro per, I'm unable to contact
23          various people and places, and I need an investigator that would make my
            case more solid that I can bring to the public. So, I need an investigator to
24          go out and investigate. [¶] The Court: ... You can't say, I need an
            investigator to investigate to check everything out. You got to give me
25          some details. [¶] The Defendant: Did you get the motion that I filed on
            that? [¶] The Court: Yes I did. And it is even more vague than what you just
26          said. I'll give you an investigator ... if I get an idea of what you need to
            check out, ... You give me something with detail, and I'll reconsider it. It's

27

28                                          17

denied without prejudice now; understand?"

The record of the hearing on February 1, 2000, contains two similar dialogues. When appellant mentioned his motion for "investigator funds," the court replied, "You got to tell me what you want investigated more than you need it. [¶] The Defendant: To serve the interest of justice. [¶] The Court: You got to tell me more than it serves the interest of justice to have an investigator with some amount of money attached to it. [¶] The Defendant: There are certain issues that involve around this case that I'm not able to look in[to] myself because I'm incarcerated. [¶] The Court: What issues would that be? [¶] The Defendant: Issues like witnesses. [¶] The Court: What witnesses do you have that you can't look into yourself? [¶] The Defendant: ... Am I supposed to name the witnesses I want investigated? [¶] The Court: Not if you don't want to. But like I told you last time, if you want to tell me stuff like that, put it in writing.... I want more than, it's in the interest of justice...."

Before the end of the hearing, the court returned to the subject while scheduling the next hearing. "The Court: ... Now, if you give me something meaningful, I'll appoint some investigator to at least talk to you.... You got to give me something meaningful other than it's in the interest of justice. .... [¶] The Defendant: You want some meat and potatoes then. [¶] The Court: I don't need a lot of details. You think there'[re] people that ought to be talked to, you say, so you actually write them down who they are, and I'll get some kind of budget so as least the guy will talk to you and decide what he can do for you, and he can tell you what might be useful within a reasonable budget."

Before the next hearing on February 23, 2000, appellant filed a written request that was as vague as those previously made. The declaration in support of the request stated: "I am an indigent inmate acting in propria persona in need of a private investigator to gather material/information as well as witness favoritable [sic] to prepare my defense."

On this record, it is clear that the trial court acted properly in denying appellant's request for an investigator. Though such requests must be viewed with "considerable liberality," the court could not appoint an investigator and authorize the expenditure of funds for this purpose without some indication of the "general lines of inquiry" that appellant wished to pursue. The court sought to prompt appellant to add some minimal level of detail to his request, suggesting the simple expedient of a list of people who "ought to be talked to," but it never received more than a general statement that appellant needed an investigator to prepare the defense.

Ex. R at 21-22.

As this demonstrates, petitioner did not provide "reasonable specificity" nor the general lines of the inquiry he wished to pursue.  See Mason, 504 F.2d at 1352 (standard).  The denial of an investigator did not violate his Sixth or Fourteenth Amendment rights.

In addition, petitioner still has not said what the investigator might have turned up

and how it might have helped his case, so even assuming that there was constitutional error and that it met the 2254(d)(1) standard, petitioner has completely failed to establish that the claimed error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)) (prejudice standard for trial error in habeas cases).  In the absence of such a showing, petitioner cannot prevail on this claim.

    2.   Confrontation Claim

Petitioner argues that his right to confront witnesses against him was violated when the trial court found that Vanessa was unavailable to testify and allowed her preliminary hearing testimony to be read to the jury.

In Crawford v. Washington, 541 U.S. 36, 59 (2004), the Supreme Court specified that prior testimony can be introduced at trial without violating the Confrontation Clause provided that the witness is unavailable and where the defendant had a previous opportunity to cross-examine.  Crawford applies retroactively on collateral review.  See Bockting v. Bayer, 399 F.3d 1010, 1012-13.

Petitioner's attorney cross-examined Vanessa at the preliminary hearing, satisfying the "opportunity to cross-examine" prong of Crawford.  Ex. H at 558-571.  So, the only question is whether Vanessa was "unavailable."  Before a trial court can rule that a witness is unavailable, the prosecution must make a good faith effort to obtain the witness' presence.  Barber v. Page, 390 U.S. 719, 724-25.  Ultimately, the extent to which the prosecution must go is a question of reasonableness.  Ohio v. Roberts, 448 U.S. 56, 74 (1980).

Kim Tejada, an investigator for the District Attorney, explained her efforts to get Vanessa to testify.  Tejada had become close with the children during the course of the investigation and frequently provided them with transportation to court and to the D.A.'s

office.  Ex. G (reporter's transcript) at 490.  She testified that she had spent more time with Vanessa than any other victim.  Id. at 495.  She and a person with a victim-witness assistance program attempted to bring Vanessa into the courtroom, id. at 494-95, but Vanessa refused to testify, id. at 490-95.  For three or four weeks before the trial that Vanessa expressed a desire not to testify.  Id. at 490.  Additionally, Tejada stated that Vanessa had become uncooperative by not making scheduled appointments and phone calls.  Id. at 491.  It was her opinion that there was nothing that she could do, short of physical force, to bring Vanessa into the courtroom.  Id. at 495.

Clearly, Tejada's efforts to convince Vanessa to testify constituted a good faith effort to procure the witness' presence.  Additionally, California law prohibits finding sexual assault victims in contempt for refusing to testify about their sexual assault, Cal. Civ. Proc. Code § 1219(b), so that means of obtaining testimony was barred. Petitioner contends that Vanessa's unavailability was not established in the absence of expert testimony regarding her emotional inability to testify, but there is no such Supreme Court requirement.

Because both prongs of Crawford were satisfied, the trial court did not violate petitioner's Confrontation Clause rights, and the rejection of that claim by the state appellate courts was not contrary to, nor an unreasonable application of, clearly established U.S. Supreme Court precedent.

G.    Failure To Submit Probation Question to Jury

Petitioner's final contention is that the trial court violated his Sixth Amendment right to trial by jury when it failed to submit to the jury the issue of whether he was a member of the victim's household under California Penal Code section 1203.066(c). Under that provision, a molester may be eligible for probation if he or she meets five criteria, one of which is that the molester be "the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the

victim's household."  Cal. Penal Code § 1203.066(c)(1).

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court found that any "fact that increases the penalty of a crime beyond the statutory maximum must be submitted to a jury, and must be proven beyond a reasonable doubt." Id. at 490. However, section 1203.066(c) provides an *exception* to the rule that the defendant, if convicted, was ineligible for probation.  It does not *increase* the penalty. Because the fact at issue here was one which would *decrease* the possible penalty, Apprendi does not apply.

Moreover, petitioner did not qualify under California law for this reduction.  The California Supreme Court has held that only relatives with blood, marital or other legal relationships qualify as relatives, not those occupying a relationship to the victim similar to that of true relatives, People v. Wutzke, 28 Cal.4th 923, 940 (2002), and the petitioner had not lived in the same household as the victims for at least six years, and then lived there only briefly.  There thus was not substantial evidence from which a jury could have found that petitioner was a relative or a member of the household, and failure to give the instruction did not violate petitioner's rights.  See  Hopper v. Evans, 456 U.S. 605, 611 (1982) (due process does not require that an instruction be given when there is not evidence to support it).

The trial court did not violate petitioner's Sixth Amendment rights by not submitting the question to the jury, and the rejection of this claim by the California appellate courts was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

Dated: September 6, 2005.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.02\MCGEE661.RUL

22